## SCHOOL DISTRICT OF THE CITY OF PONTIAC v CITY OF AUBURN HILLS

Docket No. 112600. Submitted January 3, 1990, at Lansing. Decided August 7, 1990.

The School District of the City of Pontiac brought an action in the Oakland Circuit Court, Robert L. Templin, J., against the City of Auburn Hills and the Local Development Financing Authority of Auburn Hills challenging the use of tax increment financing for the construction of barrier-free design requirements for the proposed Chrysler Technology Center and Supplier Park. The trial court granted summary disposition to defendants, ruling that the barrier-free design requirements were improvements specifically permitted by statute and that they served a public purpose. Plaintiff appealed.

The Court of Appeals *held:*

1. The Local Development Financing Act authorizes munici-. palities to pledge their credit, in the form of anticipated tax revenues, in support of tax increment bonds. Plaintiff has failed to demonstrate that defendants' determination of a valid public purpose was manifestly arbitrary. The trial court did not err in dismissing plaintiff's constitutional claims.

2. Tax increment financing applies to both existing and new facilities. The statute permits tax increment financing for construction of barrier-free improvements in the Chrysler Center.

Affirmed.

1. TAXATION — TAX INCREMENT BONDS — MUNICIPAL CORPORATIONS.

The use of tax revenues as a pledge of tax increment bonds constitutes a loan of municipal credit under article 9, § 18 of the Michigan Constitution; it is permissible if the use of the funds is provided for by law and is intended for a public purpose (Const 1963, art 7, § 26, and art 9, § 18).

REFERENCES

Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivions, §§ 579, 580, 588, 589, 592 et seq.

See the Index to Annotations under Municipal Corporations, Taxes.

2. TAXATION — LOCAL DEVELOPMENT FINANCING ACT — TAX INCRE-
    MENT BONDS.
    The Local Development Financing Act authorizes municipalities
    to pledge their credit, in the form of anticipated tax revenues,
    in support of tax increment bonds (MCL 125.2164; MSA
    3.540[364]).

3. TAXATION — LOCAL DEVELOPMENT FINANCING ACT — PUBLIC PUR-
    POSE.
    The object of the Local Development Financing Act, to contribute
    to economic growth by eliminating unemployment and under-
    employment, is in accordance with the general definition of a
    public purpose (MCL 125.2151; MSA 3.540[351]).

4. TAXATION — TAX INCREMENT BONDS.
    A tax increment financing plan may use public monies only for
    eligible property in public facilities; such facilities include both
    existing and new facilities (MCL 125.2152[h] and [k][iii]; MSA
    3.540[352][h] and [k][iii]).

*Clark, Hardy, Lewis, Pollard & Page, P.C.* (by
*Neil H. Goodman* and *Joseph F. Luther*), for the
School District of the City of Pontiac.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton*
(by *William P. Hampton* and *J. Michael Banas*),
for the City of Auburn Hills.

*Dickinson, Wright, Moon, Van Dusen & Free-
man* (by *Robert P. Hurlbert, Paul M. Wyzgoski*
and *Andrew S. Boyce*), for Local Development
Financing Authority of Auburn Hills.

Before: MARILYN KELLY, P.J., and GILLIS and
MACKENZIE, JJ.

PER CURIAM. Plaintiff appeals as of right from
an order granting summary disposition in favor of
defendants. MCR 2.116(C)(7), (8) and (10). We
affirm.

On May 19, 1987, the Local Development Fi-
nancing Authority of Auburn Hills approved a

development plan and tax increment financing plan for the proposed Chrysler Technology Center and Supplier Park (Center). The city council approved the plan, determining that it constituted a public purpose. Under the plan, the Center is to receive tax increment financing to offset various construction costs.

On August 10, 1987, plaintiff brought suit challenging the public funding of the Center. Following discovery, plaintiff dropped all claims except its challenge to funding for construction of barrier-free access. On July 25, 1988, following cross-motions for summary disposition, the judge upheld public funding of the barrier-free design requirements. He granted summary disposition to defendants, ruling the requirements were improvements specifically permitted by statute and served a public purpose.

On appeal, plaintiff first argues that the use of public tax revenues to fund the construction of barrier-free design requirements for a private entity does not serve a valid public purpose. Therefore, plaintiff urges, it is unconstitutional.

The Supreme Court has conducted a limited analysis of the constitutionality of the Local Development Financing Act (LDFA). MCL 125.2151 *et seq.*; MSA 3.540(351) *et seq. Advisory Opinion on Constitutionality of 1986 PA 281,* 430 Mich 93; 422 NW2d 186 (1988). The Court concluded that the use of tax revenues as a pledge of tax increment bonds constitutes a loan of municipal credit under article 9, § 18 of the Michigan Constitution. However, it is permissible if the use of the funds satisfies the requirements of Const 1963, art 7, § 26. *Advisory Opinion,* 129. Under § 26, defendants' loan of credit, in the form of tax increment financing, must be provided for by law and must be intended for a public purpose. Section 14 of the

LDFA satisfies the first part of the test. It authorizes municipalities to pledge their credit, in the form of anticipated tax revenues, in support of tax increment bonds. MCL 125.2164; MSA 3.540(364). *Advisory Opinion, supra.*

In order to satisfy the second constitutional prong, defendants' use of the financing must be for a valid public purpose. The Michigan Supreme Court has sanctioned a liberal interpretation of the public purpose doctrine. *Id.; Gaylord v Gaylord City Clerk,* 378 Mich 273, 298-300; 144 NW2d 460 (1966). In accordance with this interpretation, the Court found that the LDFA clears the second constitutional hurdle. This is so even though the act indirectly benefits private interests and may go beyond the limited public purpose recognized in other cases. *Advisory Opinion,* 130. The object of the LDFA, to contribute to economic growth by eliminating unemployment and underemployment, is in accordance with the general definition of public purpose. MCL 125.2151; MSA 3.540(351); *Gaylord,* 300.

Plaintiff argues that the construction costs in question would be incurred by the Center even absent public financing. It urges that this expenditure cannot be justified solely because it is part of an incentive package to promote economic growth.

Plaintiff has failed to demonstrate that defendants' determination of a valid public purpose was manifestly arbitrary. *Gregory Marina, Inc v Detroit,* 378 Mich 364, 396; 144 NW2d 503 (1966). The court did not err in dismissing the constitutional claims.

Next, plaintiff contends that the statute does not allow tax increment financing for a facility not yet in existence.

A tax increment financing plan may use public monies only for eligible property in public facili-

ties. MCL 125.2162; MSA 3.540(362). Eligible property is defined by the act as follows:

> (h) "Eligible property" means land improvements, buildings, structures, and other real property, and machinery, equipment, furniture, and fixtures, or any part or accessory thereof whether completed or in the process of construction comprising an integrated whole, located within an authority district, of which the primary purpose and use is 1 of the following:
>
> * * *
>
> (iii) A high technology activity that has as its primary purpose research, product development, engineering, laboratory testing, or development of industrial technology. This subparagraph shall not apply after December 31, 1991. [MCL 125.2152(h); MSA 3.540(352)(h).]

Public facility includes

> an improvement to a facility used by the public or a public facility as those terms are defined in section 1 of Act No. 1 of the Public Acts of 1966, being section 125.1351 of the Michigan Compiled Laws, which improvement is made to comply with the barrier free design requirements of the state construction code promulgated under the state construction code act of 1972, Act No. 230 of the Public Acts of 1972, being sections 125.1501 to 125.1531 of the Michigan Compiled Laws. [MCL 125.2152(k)(iii); MSA 3.540(352)(k)(iii).]

Plaintiff claims the Legislature coined "facility used by the public" to demonstrate its intent to allow public revenues for private entities only when they fund improvements to existing facilities.

Where a statutory provision is sufficiently ambiguous to necessitate interpretation, the primary

duty of the court is to ascertain the intention of the Legislature. We examine the statutory language, the subject matter under consideration, its scope and purpose, other relevant statutes and legislative history. *Kerby v Judges' Retirement Bd of Michigan,* 166 Mich App 302, 309; 420 NW2d 195 (1988), lv den 431 Mich 863 (1988). In such situations, all other rules of statutory construction are ancillary to this primary duty, serving only as guides to assist in the determination of legislative intent. *Kerby, supra.* Statutory provisions should be read in their entirety and in connection with the statute as a whole; provisions should not be construed so as to render another part nugatory. *Danto v Michigan Bd of Medicine,* 168 Mich App 438, 442; 425 NW2d 171 (1988); *Manistee v Employment Relations Comm,* 168 Mich App 422, 426-427; 425 NW2d 168 (1988), lv den 431 Mich 884 (1988).

The statute under interpretation refers to the act governing barrier-free design of public facilities and facilities used by the public. MCL 125.1351 *et seq.*; MSA 3.447(121) *et seq.* A facility used by the public is defined as a building, structure or improved area utilized for purposes of education, employment, or housing. MCL 125.1351(d); MSA 3.447(121)(d). It is to be used, among others, for employment or education.

Section 2 provides insight into the question whether the phrase applies only to existing facilities. It provides in part:

> (1) A public facility or facility used by the public the contract for construction of which or the first contract for construction of a portion of which is made after July 2, 1974, shall meet the barrier free design requirements contained in the state construction code.
> (2) An existing public facility or facility used by

the public undergoing a change in use group or occupancy load, or an alteration other than ordinary maintenance, after July 20, 1975, shall meet the barrier free design requirements contained in the state construction code according to the following . . . . [MCL 125.1352; MSA 3.447(122).]

The use of the phrase in this manner contemplates its application to both existing facilities (subsection 2) and facilities not yet built (subsection 1). Moreover, we fail to see how limitation of the financing to only existing facilities would further the purpose of the legislation. It is in keeping with the purpose of the LDFA, encouraging local development and economic growth, to apply this phrase to both existing and new facilities. Thus, the statute provides for tax increment financing for construction of barrier-free improvements in the Chrysler Center.

Affirmed.